UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| TYLER MAKES HIM FIRST,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 5:24-CV-05054-RAL<br><br><br>OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO DISMISS AND DENYING PETITIONER'S § 2255 MOTION |

Tyler Makes Him First filed a motion under 28 U.S.C. § 2255 in this case to vacate, set aside or correct his criminal convictions for involuntary manslaughter. Doc. 1. Makes Him First claims that he received ineffective assistance from counsel because his counsel failed to properly investigate his case, which led him to accept a guilty plea rather than go to trial. Doc. 3 at 4–5. The Government has moved to dismiss. Doc. 13. For the reasons set forth below, this Court denies Makes Him First's § 2255 petition and grants the Government's motion to dismiss.

I.  Facts

Makes Him First filed this pro se motion to vacate, set aside, or correct his sentence in Case No. 5:18-cr-50053-JLV under 28 U.S.C. § 2255 after he plead guilty to three counts of involuntary manslaughter and received a particularly harsh sentence. Doc. 1. As detailed in earlier orders, this case has a tragic backstory. Makes Him First was involved in a vehicle accident that occurred on November 4, 2017, during which the vehicle that Makes Him First was driving crossed the highway's center line and collided with a vehicle travelling the opposite direction. CR Doc. 29 at

1

1–2.[1] Makes Him First was under the influence and had a blood alcohol content of .284%. Id. at 2. The collision killed the other vehicle's three occupants: Waylon Red Elk, Sr., Jaylene Pretends Eagle, and their son, W.R.E. Id. at 2. At the time of the accident, Pretends Eagle was pregnant. Id. at 1. On September 7, 2018, Makes Him First pleaded guilty to three counts of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153. CR Docs. 28, 29, 31, 33, 35. Makes Him First had a total criminal history score of zero with no juvenile or adult convictions,[2] had graduated from high school, and was employed full time at the time of the offense as a corrections officer. CR Doc. 44 at 8–12. With a total offense level of 22 (inclusive of a 3-point offense level enhancement due to being guilty of three counts of involuntary manslaughter) and a criminal history category of I, Makes Him First faced a guideline imprisonment range of 41 to 51 months. CR Doc. 44 at 8, 12.

On February 1, 2019, the Honorable Jeffrey L. Viken[3] sentenced Makes Him First to serve 64 months on each count consecutively for a total of 192 months along with three years of supervised release for each count, to run concurrently, and $9,300 in restitution. CR Doc. 55. In explaining his reasoning for the upward variance and departure, Judge Viken considered that Makes Him First was in law enforcement and fully understood, in advance, the criminal nature of his conduct, Makes Him First had a blood alcohol content of 0.284% at the time of the accident,

---

[1] This Court cites to documents from Make Him First's underlying criminal case as "CR" followed by the CM/ECF docket number.

[2] Sentencing guidelines changes after Makes Him First's sentencing created a "zero-point" offense adjustment for most defendants with such a criminal history. Unfortunately for Makes Him First, U.S.S.G. § 4C1.1(4) renders this guideline change inapplicable to Makes Him First because his offense resulted in death.

[3] Judge Viken retired as a federal district judge in 2023 resulting in assignment of Makes Him First's case to the undersigned judge.

2

one count of involuntary manslaughter (for the death of Pretends Eagle's unborn child) had been dismissed, and Makes Him First had used marijuana while on pre-trial release. CR Doc. 56. The 192-month sentence imposed was an outlier not only for involuntary manslaughter convictions in the District of South Dakota and nationally, but voluntary manslaughter convictions as well. In the preceding decade, the mean sentence imposed for manslaughter had ranged between 33 and 86 months in custody in the District of South Dakota and between 48.5 and 73.5 months in custody nationally.[4]

---

[4] The annual sentencing statistics provided by the United States Sentencing Commission (USSC) do not distinguish between involuntary and voluntary manslaughter cases. This Court observes that generally involuntary manslaughter sentences are substantially lower than voluntary manslaughter given the nature of the offenses and differing intent requirements. For instance, the present average and median sentences for involuntary manslaughter for those with a total offense level of 22 and criminal history category of I are 54 months and 48 months respectively. These annual sentencing averages also do not include the impositions of zero-month, or no prison time, sentences in manslaughter cases. Between 2009 and 2024, fifteen individuals convicted of manslaughter (several of which would be involuntary manslaughter of the nature of a mother accidentally overlaying and suffocating her child) in the District of South Dakota received a type of alternative sentence, such as a prison/community split sentence, or probation only. The relative harshness of Makes Him First's sentence is not a ground for relief under § 2255 and at most may support a First Step Act compassionate release motion under § 603(b) and U.S.S.G. § 1B1.13(b)(5). 18 U.S.C. § 3582(c)(1)(A). The data referenced by this Court is available in the USSC's annual Sentencing Statistical Information Packets or on the USSC Judicial Sentencing Information (JSIN). See USSC, Statistical Information Packet Fiscal Year 2008 District of South Dakota 10, 12 (2009); USSC, Statistical Information Packet Fiscal Year 2009 District of South Dakota 10, 12 (2010); USSC, Statistical Information Packet Fiscal Year 2010 District of South Dakota 10, 12 (2011); USSC, Statistical Information Packet Fiscal Year 2011 District of South Dakota 10, 12 (2012); USSC, Statistical Information Packet Fiscal Year 2012 District of South Dakota 10, 12 (2013); USSC, Statistical Information Packet Fiscal Year 2013 District of South Dakota 10, 12 (2014); USSC, Statistical Information Packet Fiscal Year 2014 District of South Dakota 10, 12 (2015); USSC, Statistical Information Packet Fiscal Year 2015 District of South Dakota 10, 12 (2016); USSC, Statistical Information Packet Fiscal Year 2016 District of South Dakota 10, 12 (2017); USSC, Statistical Information Packet Fiscal Year 2017 District of South Dakota 10, 12 (2018); USSC, Statistical Information Packet Fiscal Year 2018 District of South Dakota 11, 13 (2019); USSC, Statistical Information Packet Fiscal Year 2019 District of South Dakota 11, 13 (2020); USSC, Statistical Information Packet Fiscal Year 2020 District of South Dakota 11, 13 (2021); USSC, Statistical Information Packet Fiscal Year 2021 District of South Dakota 11, 13 (2022); USSC, Statistical Information Packet Fiscal Year 2022 District of South Dakota 11, 13 (2023); USSC, Statistical Information Packet Fiscal Year 2023 District of South

In his § 2255 motion, Makes Him First seeks relief from alleged ineffective assistance of counsel. Doc. 1. Specifically, he argues that his defense counsel, Assistant Federal Public Defender Jennifer Albertson, failed to scrutinize the Government's allegations against Makes Him First, investigate the facts surrounding the accident, and hire an expert to reconstruct the accident and determine relevant fault. Doc. 3 at 8. Makes Him First alleges that he has discovered three new pieces of information since his incarceration[5]: (1) that toxicology reports show the other driver had alcohol and drugs in his system, including methamphetamine, THC, and opioids; (2) victim W.R.E., a child, was not restrained by a seat belt or car seat and instead was sitting on Pretends Eagle's lap at time of impact; and (3) there were dozens of beer cans found at the scene of the accident, many of which did not belong to Makes Him First. Id. at 4. Makes Him First alleges

---

Dakota 11, 13 (2024); USSC, Statistical Information Packet Fiscal Year 2024 District of South Dakota 11, 13 (2025); JSIN, USSC, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Dec. 11, 2025).

[5] Makes Him First clarified in a later filing how he allegedly learned of the new information. Doc. 6. Makes Him First filed a letter from Santa Hudspeth Belt, the Oglala Sioux Tribe (OST) Legal Secretary, which described how on November 17, 2023, Cecelia Makes Him First and Sharon Two Bulls came to the OST Attorney General's Office to request copies of the police reports related to the underlying accident. Doc. 6-1 at 2. Belt wrote that she informed them that she could not release any documents to them and the report had been released to Makes Him First's defense counsel. Id. Makes Him First also filed a declaration by Sharon R. Two Bulls, Makes Him First's mother. Doc. 6-2 at 2. Two Bulls declared that she went to the OST Attorney General's Office to obtain the police report on Makes Him First's accident. Id. Two Bulls also wrote that the OST Legal Secretary said she could only release those documents to an attorney. Id. Two Bulls declared,

> During that visit, we were told for the first time that a toxicology before existed [sic] that showed the driver of the other vehicle had alcohol and drugs in his system, ... that the young child was not in a child restraint seat or seat belt and was on the lap of the passenger in the front seat ... [and] many beer cans were found at the scene of the accident and that there were questions about how the accident occurred.

Id. Two Bulls declared that she told Makes Him First about these discoveries in early 2024. Id.

that he did not know any of this information prior to his guilty plea, and if Albertson had properly investigated the case and uncovered this information or hired an expert, Makes Him First would have taken the case to trial and presented this evidence or received a different plea deal and a lower sentence. Id. at 4–5. Finally, Makes Him First alleges that he was suffering from mental health issues during the pendency of this case, which also impacted the ultimate outcome. Id. at 5.

On July 23, 2024, this Court screened Makes Him First's § 2255 motion and determined that the motion may be time-barred. Doc. 4. As detailed in the earlier order, Makes Him First appealed his sentence to the United States Court of Appeals for the Eighth Circuit but later filed a motion to dismiss the appeal. CR Docs. 58, 61. On March 1, 2019, the Eighth Circuit granted Makes Him First's motion to dismiss the appeal and entered a judgment. CR Doc. 61. Makes Him First did not petition for a writ of certiorari and his judgment became final on June 10, 2019, when his time for filing a petition for a writ of certiorari to the Supreme Court of the United States expired. United States v. Johnson, 457 U.S. 537, 542 n.8 (1982) (citation omitted); see also Clay v. United States, 537 U.S. 522, 525, 527 (2003). Makes Him First's one-year statute of limitations for filing a § 2255 motion began running on June 11, 2019, and expired on June 10, 2020, more than four years before Makes Him First filed this motion. 28 U.S.C. § 2255(f); Doc. 1. As the record lacked the information necessary to determine whether the motion was time barred, this Court directed briefing showing cause why Makes Him First's § 2255 motion should not be dismissed as untimely. Doc. 4 at 5.

In response, Makes Him First argued that his § 2255 motion is timely because he filed the motion within one year of discovering new evidence, Doc. 6, while the Government argued that the motion is untimely, Doc. 5. Following these filings, this Court was still unable to determine whether the petition was timely because that determination depended in large part on whether

Makes Him First's allegations were true; whether the newly discovered evidence was made available to Albertson, and if so, whether Albertson shared the evidence with Makes Him First; and if the Government had exculpatory information it did not disclose. Doc. 7 at 8. On April 29, 2025, this Court ordered the Government to answer or otherwise respond to the petition and Albertson to provide by affidavit information addressing Makes Him First's specific allegations concerning her representation of him if Makes Him First waived his attorney-client privilege. Doc. 7 at 8–10.

After Makes Him First filed his waiver, Albertson filed an affidavit contesting the claims of ineffective assistance of counsel on July 3, 2025. Doc. 11. Albertson attested that she never received any report from OST which indicated that the other driver, Waylon Red Elk, Sr., was intoxicated. Id. at 3. Albertson had reviewed a toxicology report for Red Elk, Sr., which was "negative for substances or alcohol according to both the autopsy report (Bates 22) and the eye fluid draw" for Red Elk, Sr. Id. Albertson attested that she knew that W.R.E. had been unrestrained and on his mother's lap. Id. at 3–4. Albertson stated that "[a]ll scene and dispatch reports of the crash scene indicate the presence of only Budweiser bottle [sic] at the scene." Id. at 4. Albertson had reviewed all of this evidence with Makes Him First prior to his guilty plea. Id.

Albertson recounted that her defense investigator contacted Brad Booth, who had done the independent accident reconstruction in the case. Id. "Booth's opinion as to the cause of the crash did not change with different variables offered to him about the victim's car, the victims being unrestrained, etc." Id. Following the independent questioning of Booth, Albertson did not feel that it would be fruitful to contact another expert. Id. at 6. Albertson reiterated that the fact W.R.E. had been unrestrained was known to Makes Him First throughout the case, and although it was a point of negotiation, "AUSA Patterson relayed to Mr. Makes Him First via counsel that the family

of the victims were difficult and he would not be able to make a better offer (to not include a plea to the count involving [W.R.E.])." Id. at 4.

Albertson recounted that Makes Him First did not want a trial despite being told repeatedly about his right to trial, and one thing that stood out in Albertson's notes and the recollections of staff and the defense investigator "was [Makes Him First's] desire to accept responsibility."[6] Id. at 5. Following Makes Him First's sentencing, although counsel advised him to appeal his sentence for being too high, Makes Him First contacted the Federal Defender's Office to request that his appeal be dismissed because "he did not want the family to suffer any further." Id. Finally, addressing Makes Him First's discussion of his mental health during the pendency of this case, Albertson stated that Makes Him First sought treatment throughout her representation of him and never seemed to struggle to understand his options or the facts of his case. Id. at 5–6.

Following the filing of Makes Him First's defense counsel's affidavit, the Government filed a motion to dismiss on August 4, 2025. Docs. 12, 13. The Government raised the following three points concerning the alleged new information discovered by Makes Him First. First, the Government had no toxicology reports showing Red Elk, Sr. was intoxicated at the time of the accident and denied any Brady allegations. Doc. 14 at 7, 8 n.2. Second, the Government asserted that the fact W.R.E. was unrestrained was widely known and considered as "[t]he responding officer reports and both reconstruction reports included this information." Id. at 9. Third, the Government submitted that although there were beer cans found at the scene, they were "in and

---

[6] Consistent with this recollection, AUSA Patterson said at the sentencing hearing, "When we indicted this case, I will tell the Court that, very shortly after the initial appearance, the defendant, through Ms. Albertson, contacted my office and explained that he would plead to whatever charges or whatever plea agreement we offered." CR Doc. 68 at 44.

around Makes Him First's truck." Id. at 8. As of the date of this opinion and order, Makes Him First has yet to respond to the Government's motion or the Albertson affidavit.

## II. Discussion

### A. Makes Him First's Petition is Untimely

Makes Him First seeks relief pursuant to 28 U.S.C. § 2255. Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Motions under § 2255 are subject to a one-year statute of limitations that runs from the latest of four specified dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental inaction in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In this case, two of the above dates may be relevant—the date on which the judgment of conviction became final and the date on which Makes Him First could have discovered through the exercise of due diligence the facts supporting the claim presented.

A judgment of conviction is deemed final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed." Johnson,

8

457 U.S. at 542 n.8; Clay, 537 U.S. at 527. The time for filing a petition for writ of certiorari expires ninety (90) days after entry of the court of appeals' judgment. Clay, 537 U.S. at 525. As noted above, Makes Him First's one-year statute of limitations for filing a § 2255 motion began running on June 11, 2019, and expired on June 10, 2020, more than four years before Makes Him First filed this motion. 28 U.S.C. § 2255(f); Doc. 1. Makes Him First concedes that his conviction became final more than one year before he filed his § 2255 motion, but he contends that he has been incarcerated since his conviction with limited access to legal resources and the outside world. Doc. 1 at 12. Because he only learned of what he contends are his attorney's mistakes in early 2024, he asserts that he has filed the motion within a year of learning that information. Id.

To fall within 28 U.S.C. § 2255(f)(4) for the limitation period to run from the discovery of new facts supporting a claim, the Eighth Circuit held that a petitioner "must show the existence of a new fact, while also demonstrating [that he] acted with diligence to discover the new fact." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (brackets in original) (quoting E.J.R.E. v. United States, 453 F.3d 1094, 1097 (8th Cir. 2006)). The Eighth Circuit has also instructed that a district court should consider "when a duly diligent person in petitioner's circumstance would have discovered" the operative facts. Id. (internal quotation and citation omitted). According to the Supreme Court, "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. Johnson v. United States, 544 U.S. 295, 308 (2005).

Makes Him First claims that he first discovered the information on which he bases his ineffective assistance of counsel claim in early 2024 and thus asserts the information was not reasonably available to him before June 10, 2020, when the one-year statute of limitations for filing a § 2255 motion expired. But Makes Him First does not allege anything to demonstrate that

9

he acted with diligence to discover the allegedly new information, and the record does not credibly demonstrate that the information Makes Him First alleges either exists or is new. Albertson and the Government state that there was no toxicology report showing Red Elk, Sr. was intoxicated. To the contrary, both the autopsy and the eye fluid draw for Red Elk, Sr. came back negative for narcotic substances and alcohol. Doc. 11 at 3. Albertson knew of and discussed with Makes Him First the impact that the fact W.R.E. was unrestrained during the crash had on the plea negotiations, but she determined after the defense investigator's discussion with the accident reconstruction expert that this fact did not change the expert's opinion on the cause of the crash. Id. at 4. Finally, Albertson knew of one beer can found at the scene of the accident, id. at 3, and the Government states that beer cans were found only in and around Makes Him First's truck, Doc. 14 at 8. Albertson shared all of this information with Makes Him First before he pleaded guilty. Doc. 11 at 4. Thus, on the basis of the record, § 2255(f)(4) does not on these facts extend the one-year limitation period, and Makes Him First's § 2255 motion is time-barred.

The one-year statute of limitations in § 2255 is not jurisdictional. Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003). The time limit is subject to equitable tolling when "extraordinary circumstances" beyond a petitioner's control make it impossible to file a petition on time. Id. A petitioner seeking equitable tolling must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. Holland v. Florida, 560 U.S. 631, 649 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). The decision whether to equitably toll the limitations periods is a fact-intensive inquiry based upon the totality of the circumstances. Holland, 560 U.S. at 649–50. Equitable tolling represents "an exceedingly narrow window of relief." Shoemate v. Norris, 390 F.3d 595, 597 (8th Cir. 2004) (quoting Jihad v. Hvass, 267 F.3d 803, 805 (8th Cir. 2001)). The burden is on the petitioner to demonstrate circumstances exist for

equitable tolling. Holland, 560 U.S. at 649. Given the totality of the circumstances, particularly that the relevant information in discovery was available to and discussed with Makes Him First prior to his entering a plea agreement, Makes Him First has not demonstrated that the circumstances exist for equitable tolling.

### B. Makes Him First Has Not Demonstrated Ineffective Assistance of Counsel

Even if this Court were to consider this motion as timely filed, this Court would have to deny the motion on the merits. When considering a § 2255 motion, the court holds an evidentiary hearing "unless the motion and the files and the records of the case conclusively show that [the prisoner] is entitled to no relief." Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (cleaned up and citation omitted). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (cleaned up and citation omitted). The Eighth Circuit has stated:

> A § 2255 motion may be dismissed without a hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.

Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (cleaned up and citation omitted). Because the record conclusively demonstrates that Makes Him First is not entitled to relief under § 2255, an evidentiary hearing is not necessary in this case. This case can be dismissed on the merits upon analysis of the substance of Makes Him First's § 2255 motion alleging ineffective assistance of counsel.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372 U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v.

11

Alabama, 287 U.S. 45, 63 (1932). To establish a claim of ineffective assistance of counsel, the petitioner must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To meet this two-pronged standard, the petitioner must show that "(1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in Strickland." Missouri v. Frye, 566 U.S. 134, 140 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)); see also Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017).

The first part of the Strickland test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The petitioner must "overcom[e] the strong presumption that defense counsel's representation fell 'within the wide range of reasonable professional assistance.'" Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998) (quoting Strickland, 466 U.S. at 689). Courts are not to "second-guess" trial strategy. Williams, 452 F.3d at 1013. "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690); see also English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (holding that counsel's "reasonable trial strategy cannot rise to the level of ineffective assistance of counsel"). A failure to investigate a claim will fail if counsel investigated

the facts, considered viable theories, and developed evidence to support those theories. Lyons v. Luebbers, 403 F.3d 585, 594 (8th Cir. 2005).

Plea negotiations are also "a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Padilla v. Kentucky, 559 U.S. 356, 373 (2010). See also Lafler v. Cooper, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). "Effective assistance requires the provision of reasonably informed advice on material issues," and attorneys fail to meet this standard if they are both ignorant on a point of law and fail to perform basic research on that point before offering a defendant advice on whether to plead guilty. Mayfield v. United States, 955 F.3d 707, 711 (8th Cir. 2020). Outside of this failure to provide reasonably informed advice on material issues, "[b]argaining is, by its nature, defined to a substantial degree by personal style," and "[t]he alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." Frye, 566 U.S. at 145.

"The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error[.]" Williams, 452 F.3d at 1013. This means proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Ford v. United States, 917 F.3d 1015, 1021 (8th Cir. 2019). To demonstrate prejudice when challenging the validity of a guilty plea, "the petitioner must show 'that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial.'" United States v. Frausto, 754 F.3d 640, 643 (8th Cir. 2014) (quoting Hill, 474 U.S. at 59); see also Hill, 474 U.S. at 59 (prejudice present if discovery of evidence would have changed counsel's recommendation); Lyons, 403 F.3d at 594.

"Because the defendant must satisfy both prongs of the Strickland test to succeed on an ineffective-assistance claim, a court may decide such a claim by addressing either prong." Ford, 917 F.3d at 1021. Makes Him First's ineffective assistance of counsel claim does not satisfy either.

Makes Him First cannot satisfy the first part of the Strickland test because he has not shown that Albertson was ineffective by failing to properly investigate his case or represent him during the plea negotiations. Makes Him First argues that Albertson failed to scrutinize the Government's allegations against him, investigate the facts surrounding the accident, and hire an expert to reconstruct the accident and determine relevant fault. Doc. 3 at 8. Makes Him First's core issue with his representation was Albertson's failure to find and use certain information, but Albertson has demonstrated that she reasonably investigated the case, reviewed all discovery with Makes Him First, and provided "reasonably informed advice on material issues." See Doc. 11; Mayfield, 955 F.3d at 711; Brown v. United States, 656 F.2d 361, 364 (8th Cir. 1981) ("Appellant, however, failed to allege any facts which would support this claim that the defense attorney failed to investigate.").

The toxicology report for the other driver, Red Elk, Sr., from his autopsy was negative for narcotic substances and alcohol. Doc. 11 at 3. Neither Albertson nor the Government saw any toxicology report showing Red Elk, Sr. to be intoxicated, which Makes Him First alleges exists based on a conversation he had with his mother, Two Bulls. See id. at 3; Doc. 14 at 7–8. But in the letter and declaration submitted by Makes Him First, Two Bulls did not indicate that she

actually saw this report, only that she was told about it, and the OST Legal Secretary Belt did not mention the existence of this specific toxicology report, only that she was not authorized to hand over any documents to Makes Him First's family members. Doc 6-1 at 2; Doc. 6-2 at 2.

The record establishes that Albertson knew of the toxicology report from the autopsy of Red Elk, Sr. included in the discovery, which the Government represents is the only toxicology report completed for Red Elk, Sr. Red Elk, Sr. had no alcohol or drugs in his system when he died. Albertson also knew that W.R.E. was unrestrained and that discovery showed at least one beer can at the scene of the accident. She shared all of this information with Makes Him First prior to his guilty plea. Doc. 11 at 3–4. Albertson negotiated with AUSA Patterson using the information she had about the crash, including that W.R.E. was unrestrained, but AUSA Patterson would not make a better offer than the one Makes Him First ultimately accepted. Id. at 4. Albertson decided not to hire an accident reconstruction expert after her investigator confirmed with Booth that his opinion about the cause of the crash would not change with different variables, such as the fact that W.R.E. was unrestrained. Id. at 4, 6. Both this particular decision and Albertson's overall investigation fall "within the wide range of reasonable professional assistance." Delgado, 162 F.3d at 982 (quoting Strickland, 466 U.S. at 689); Lyons, 403 F.3d at 594. Makes Him First's claim fails because Albertson investigated the facts, considered viable theories, and sought evidence to support those theories, and Albertson provided Makes Him First with reasonably informed advice on material issues. Lyons, 403 F.3d at 594; Mayfield, 955 F.3d at 711. Albertson's representation of Makes Him First was not ineffective. See Frye, 566 U.S. at 145.

Even if the first prong of the Strickland test were satisfied, Makes Him First suffered no prejudice from how Albertson investigated the case or her advice on whether to accept the plea agreement. Prejudice exists only if an error caused the proceeding's result to have been different

or the discovery of certain evidence would have changed counsel's recommendation. Lyons, 403 F.3d at 594; Hill, 474 U.S. at 59. Makes Him First cannot show that there was a "reasonable probability" that the discovery of this information, which he alleges is new, would have resulted in him going to trial. Frausto, 754 F.3d at 643 (8th Cir. 2014) (quoting Hill, 474 U.S. at 59).

Albertson has written in her affidavit that Makes Him First, knowing the information in discovery, "never requested or indicated he wanted a trial." Doc. 11 at 5. In fact, the collective recollection of those who worked on the case agreed that "his desire to accept responsibility" stood out. Id. In addition, the accident reconstruction expert Booth determined Makes Him First's conduct while driving drunk was the cause of the crash. Doc. 14 at 10. Makes Him First through his attorney's defense investigator, queried this expert about various factors that could impact that analysis, and Booth informed them that his opinion on the cause of the accident remained the same. Doc. 11 at 4. Makes Him First has not shown that the failure to investigate or negotiate effectively on his behalf prejudiced his proceedings giving rise to constitutional error under the second prong of the Strickland test. See Lyons, 403 F.3d at 594; Hill, 474 U.S. at 59. If there is an injustice in this horribly tragic case, it stems from the peculiarly harsh sentence given to a man with no criminal record and a work history in law enforcement who unintentionally caused the death of three family members and an unborn child. That perceived injustice was not in any way the fault of Makes Him First's counsel or attributable to ineffective assistance of counsel under these circumstances.

## III. Conclusion

Although Makes Him First is serving a sentence for involuntary manslaughter that deviates substantially from other manslaughter sentences imposed in the District of South Dakota and

nationally, the grounds that Makes Him First has put forward do not qualify him for relief under 28 U.S.C. § 2255. For the reasons explained above, it is hereby

ORDERED that Makes Him First's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss Makes Him First's § 2255 Motion, Doc. 13, is granted.

DATED this 15th day of December, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE